Detroit *v.* County Commissioners of Somerset.

Inhabitants of Detroit, *Petitioners, versus* County Commissioners of the County of Somerset.

By R. S., c. 18, §§ 16 and 17, after a joint board of County Commissioners has decided to locate a way which will extend into their several counties, each board may act separately in locating so much of the way as lies within its own county.

R. S., c. 18, §§ 38 and 39, provide that a highway may be laid out on the line between towns, part of its width being in each, and the Commissioners *may* then divide it crosswise, and assign to each *town* its proportion thereof, by metes and bounds.

If, in locating so much of a highway, extending into two counties, as is in their own county, the County Commissioners assign, in their report, the several portions of the road to be built by the respective *counties*, instead of by the *towns*, in which said road runs; a writ of *certiorari* will not be granted to quash the proceedings.

Nor will such a writ be granted because no damages were awarded to the individuals over whose land the road passed, nor because such land owners were not named, it appearing that no damages were claimed.

Nor because no time is allowed the owners of land over which the road is located to take off wood, timber, and other erections. The statute allows them one year for that purpose.

Petition for a writ of *certiorari*.

The boards of County Commissioners of the counties of Waldo and Somerset, acting jointly upon a proper petition, adjudged that a highway running into both counties—both *termini* of which were in Somerset county—should be located and established.

The Commissioners of Somerset made a report of their proceedings under that adjudication. So much of their report as is necessary to be transcribed was as follows:—
"Commencing on the line between Somerset and Waldo, and on the line between the towns of Burnham and Detroit, and about fifty rods northerly of John B. Pushaw's house in the town of Burnham, and in the centre of the county road on the "horseback," so called, at a stake marked "R," &c.; "thence," [specifying five corners with their respective distances, and referring to a stake and tree, for a monument at the end of each distance,]—"to a stake marked R, standing

in the dividing line between the counties of Somerset and Waldo." At this point, the way crossed wholly into Waldo and continued in said county of Waldo, thirty-four rods and eighteen links, when it crossed back into Somerset. The report continued:—"*Somerset to build to said stake on the north, and Waldo to build to said stake on the south.* Commencing again, also, on the horseback at a point *thirty-four rods and eighteen links north of last named point, and at the north end of that part of the county road located this day by the County Commissioners of Waldo,* at a stake in the centre marked R, *Waldo to build to said stake on north, and Somerset on south,* as per agreement of County Commissioners of Somerset and Waldo; thence" [specifying eight different courses, with their respective distances, referring to a monument at the end of each,] "to a stake marked R, standing in the centre of the county road leading to Pittsfield village," &c.; "said road to be four rods wide, and the line described to be the centre thereof."

"No damages are claimed by or awarded to the owners of land over which the road passes, and two years are allowed to the towns of Pittsfield and Detroit to build and make said roads passable.

"Given under our hands," &c.

This is a petition for a *certiorari,* with a view to quash the proceedings of the Commissioners of Somerset county in establishing the road.

The petitioners assigned five errors, all of which appear in the opinion of the Court.

*J. H. Webster,* for the petitioners, argued:—

The proceedings of County Commissioners in locating and establishing ways, being entirely regulated by statute, the statute provisions must be strictly pursued.

In regard to ways in two or more counties, R. S., c. 18, § 17, provides that "each county must be represented by a majority of its Commissioners. A majority of those present *may decide upon the whole matter.* The duty of *carrying*

*that judgment into effect* is to be performed in each county by its own Commissioners."

The "*whole matter*" cannot be "*decided*," so long as anything remains to be determined. To determine that "common convenience and necessity require the location of a road" between two points, is not a *determination* of the *whole matter*. The actual location of the road upon the face of the ground, by courses, &c., must be done, before the *whole matter is decided*. There may be obstructions in the direct course to be avoided. The judgment is to be executed by the separate boards.

Proceedings in the Commissioners' Court do not come to judgment, until they are closed and ordered to be recorded. It cannot be when the Commissioners have decided the road prayed for to be of "common convenience," &c.; for, upon proceeding to locate, they may find too high damages claimed, or greater obstructions than were first supposed; or after they report, juries, upon appeal, may award such damages as to induce the Commissioners to refuse to establish the road.

Sections 16 and 17 are barren of directions as to mode of proceedure on joint petitions. Legislature only intended to point out steps peculiar to joint petitions, leaving all other steps the same as those required before a single board.

*Sawyer* v. *County Commissioners of Kennebec*, 25 Maine, 231, decides that, under R. S. of 1841, c. 25, § 26 — which was an exact transcript of the Act of 1832 and 1836 — in case of a joint view, after the adjudication that the road prayed for is of "common convenience," &c., it is the duty of the separate boards to make the location each in its own county. When the laws were revised in 1857, the provisions above cited had been in force twenty-six years, and a judicial construction given them. Instead of re-enacting them as they then were, very essential modifications of language were made. Why that change, if the law was intended to remain the same?

Where, in the revision of a law, a material change is

made, the Legislature cannot be presumed to have unintentionally made it. *Woodman* v. *Valentine*, 24 Maine, 553.

So, when, in the revision, some part of the revised Act is omitted, the part omitted cannot be revised by construction, &c. *Pingree* v. *Snell*, 42 Maine, 55; *Ellis* v. *Page*, 1 Pick., 43.

The counsel then argued the errors assigned.

Under the 4th error assigned, counsel cited R. S., c. 18, § 4; *Cushing* v. *Gay*, 23 Maine, 9.

*S. D. Lindsey*, for the respondents.

The opinion of the Court was drawn by

WALTON, J.— This is a petition for a writ of *certiorari* to quash the record of the doings of County Commissioners in locating a highway, lying partly in the county of Somerset and partly in the county of Waldo.

The *first* error assigned is as follows :—

"Said Commissioners act jointly in making their location and not each board separately, in its own county, and they have located a road at each end of the road prayed for, and left a portion in the middle unlocated, and provided no means to pass from one end to the other."

Two or more boards of Commissioners, after having decided to locate a way, which will extend into their several counties, are not required by law to act jointly in making the location. Each board may act separately in locating so much of the way as lies within their county. Such was a correct course of proceeding under the R. S. of 1841, c. 25, §§ 25 and 26; and such we hold to be a correct course of proceeding under the R. S. of 1857, c. 18, §§ 16 and 17. The phraseology in the latter is somewhat different from that in the former, but we think the meaning, when applied to the location of ways extending into two or more counties, is the same. An examination of the record fails to satisfy us that the location of any portion of the way prayed for has been omitted, and it is unnecessary, therefore, to determine what would be the effect of such an omission. So

much of the way as lay in their county was located by the Commissioners of Somerset, and, as nothing appears to the contrary, it is to be presumed that the Commissioners of Waldo have done their duty and located the rest of it, which lay in their county. Such a method of locating the way we hold to be legal and proper.

The *second* and *third* alleged errors may be considered together. They are as follows :—

"In two places the Commissioners have assigned a portion of the road to be built by Waldo and a part by Somerset county, whereas the law requires the towns and not the counties to build the roads, and it is not competent for the Commissioners to require counties to build them. In one place Somerset is required to build a portion of road lying in Waldo, and Waldo a corresponding portion in Somerset county."

An examination of the record before us discloses the fact that these errors are correctly assigned. They probably occurred in this way :— At the places referred to the way is laid out on the line between the towns of Detroit and Burnham, part of its width being in each; and it is provided by law, (R. S. c. 18, §§ 38, 39,) that when a highway is thus laid out the commissioners may divide it crosswise, and assign to each town its proportion thereof by metes and bounds; and in this case it happened that the line between the towns was also the line between the counties; and by an oversight, probably, the Commissioners have stated in their record that they divided it between the counties, instead of between the towns. It thus appears, by the record, that the Commissioners omitted to make a division between the towns, for which they had lawful authority, and made one between the counties, for which they had not lawful authority; and, if the law peremptorily required the Commissioners to make such a division between the towns, so that, in omitting to make it, the inhabitants of Detroit were deprived of a clear legal right; or if, in making such a division between the counties, the petitioners were in any

way aggrieved, they would be entitled to a remedy. What the proper remedy would be, we do not now determine. But the Commissioners were not peremptorily required to make such a division between the towns. The law is, that they *may* make such a division, not that they must make it. It was therefore optional with them to make it or not, and the omission to make it deprived the petitioners of no legal right. Nor do we perceive that the petitioners can be in any way aggrieved by the agreement that a portion of the way lying within their limits should be built by the county. If this agreement should be carried into effect, a burden would be thrown upon the county which otherwise the petitioners would be obliged to bear alone. The second and third errors assigned, therefore, furnish no ground of complaint to the petitioners.

The *fourth* alleged error is as follows : —

"No damages are awarded to individuals over whose land the road passes, nor are such named."

As no damages were awarded, it is to be presumed that in the opinion of the Commissioners none were sustained. And as no one appeared to claim any, either at the hearing or afterwards, it is fairly to be presumed that the owners of the land were of the same opinion. The record discloses no error in this respect.

The *fifth* and last error assigned is as follows : —

"No time is allowed owners of land over which the road is located to take off wood, timber and other erections."

The law allows one year for this purpose ; and as nothing which the Commissioners could say would either enlarge or restrict the time, it was entirely proper for them to remain silent upon the subject.

The conclusion to which we have arrived is, that the petition must be dismissed. ·

*Petition dismissed, cost for respondents,*
*to be taxed jointly — not separately.*

Appleton, C. J., Cutting, Davis and Barrows, JJ., concurred.